# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MUTI A. AJAMU-OSAGBORO,  :
      Petitioner, :  CIVIL ACTION
         :
  v.       :  NO. 06-05355
         :
GEORGE PATRICK, WARDEN, et al., :
      Respondents. :

## Memorandum

YOHN, J.                  June 2, 2009

  Petitioner Muti A. Ajamu-Osagboro has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving a life prison sentence following his convictions for second degree murder, robbery, and criminal conspiracy.  Petitioner asserts: that at trial the Commonwealth withheld exculpatory evidence; that petitioner received ineffective assistance of counsel at trial, during his appeal, and in the post-conviction relief process; and that state courts denied his right to due process during the appeal and post-conviction relief proceedings.  After conducting a de novo review of the Report and Recommendation of United States Magistrate Judge Linda K. Caracappa, and upon careful consideration of petitioner's objections thereto and the parties' submissions,[1] the court will overrule the objections, approve and adopt the Report and Recommendation, and dismiss petitioner's claims as not cognizable or

---

[1] Following the R&R, Petitioner submitted: Objections to U.S. Magistrate Judge's Report and Recommendation to Plaintiff/Petitioner's Writ of Habeas Corpus; Motion to Strike Respondent's [sic] Untimely Reply to Plaintiff's Objections; Motion to Rebut Determination of Facts Made by State Court Pursuant to § 28 USC 2254(e)(2) [sic]; and Supplemental Objections. Because all of these submissions pertain to issues relevant to the R&R and petitioner's objections, the court will consider them all together in this memorandum.

untimely.

## I.    Facts and Procedural History[2]

On November 4, 1981 following a bench trial before the Honorable Charles L. Durham of

the Pennsylvania Court of Common Pleas of Philadelphia County, Judge Durham convicted

petitioner of second degree murder, robbery, and conspiracy.  The convictions arose out of the

events of January 2, 1981.  That day petitioner and four co-conspirators—Richard Phelps,

William Elliot, Mark Robinson, and Joseph Thomas—robbed a grocery store, and in the process

Phelps shot and killed Sook Ja Yu ("the victim"), who, with her husband, owned the store,

located at 12th and Mt. Vernon Streets in Philadelphia.

Earlier that day, the conspirators had met at various times to plan the robbery and secure a

gun to use in the crime.  At trial, petitioner testified that he did not participate in these

discussions, but did join the four other conspirators in the early evening, as they walked to the

store with the intention of robbing it.  Petitioner admitted that he heard the others discussing a

robbery and saw their weapons.  At the store, petitioner and Robinson entered and then exited

minutes later to tell the others that there were no customers present.  Petitioner, however,

testified that he told the group to "pull up, it's not cool"[3] and then walked away from the store.

While petitioner and Robinson remained outside the store outside, Elliot, Thomas, and Phelps

---

[2]  Unless otherwise noted, the court derives this recitation of the facts from the trial
court's opinion pertaining to petitioner's conviction.  *See Commonwealth v. Ivey*, Nos. 2602-
2605, slip op. at 1-6 (Pa. Ct. Com. Pl. Phila. May 11, 1982).  Petitioner was formerly known as
Steven Ivey.

[3]  Although at trial petitioner relied on this testimony as evidence of his defense of
renunciation, petitioner now claims he said this as soon as he realized his associates' intentions
and to dissuade them from committing the crime.  The Commonwealth asserts that petitioner was
telling the others to wait for a better time to carry out the robbery.

entered with Phelps carrying a gun.  Thomas left the store shortly after he saw the victim's

husband.  Upon exiting, Thomas joined Robinson and petitioner, who were fleeing the store.

Elliot and Phelps remained and confronted the victim.  A shot was fired, and Elliot and Phelps

fled, catching up to the other conspirators.  Phelps then announced to the others that he shot the

victim.

Following post-trial motions, Judge Durham sentenced petitioner to life in prison for

second degree murder and two terms of four to ten years each for robbery and conspiracy

respectively, to be served concurrently with the life sentence.  On April 19, 1984, the Superior

Court of Pennsylvania affirmed the judgment of sentence.  Petitioner did not file a petition for

allowance of appeal with the Pennsylvania Supreme Court because, as he claims, his attorney

failed to file that document, as petitioner instructed, and did not notify petitioner of the Superior

Court's decision until September 11, 1984, well after the time to file an allowance of appeal had

passed.[4]

On January 8, 1997, almost sixteen years later, petitioner collaterally attacked his

conviction via a pro se petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42

Pa. Cons. Stat. Ann. §§ 9541 *et seq.* (2008).  Through counsel, petitioner filed an amended

petition on January 18, 1997.  Petitioner claimed that: (1) at his original trial the prosecution

withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (2) the

court denied him his Sixth Amendment right to a jury trial; and (3) he received ineffective

assistance of counsel.  On March 31, 1998, the Honorable Gary S. Glazer denied the petition and

---

[4]  Petitioner does not explain how he instructed his counsel to file a petition for an
allowance of appeal with the Supreme Court when he says he had not received notice of the
Superior Court's rejection of his appeal.

on April 7, 1998 denied petitioner's motion for reconsideration.

Petitioner claims that he appealed that decision by filing a notice of appeal on April 27, 1998. Under the Pennsylvania Rules of Appellate Procedure, to perfect an appeal of a lower court decision, a party *must* file "a notice of appeal with the clerk of the lower court within the time allowed by Rule 903," along with proof of service and any order for transcript. Pa. R. App. P. 902 (2009) ("Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal."); *see also* Pa. R. App. P. 905(a) (setting forth required materials to accompany notice of appeal for filing with clerk of court). Judge Glazer's order dismissing his PCRA petitioner had attached to it a document that informed petitioner that his notice of appeal "must be filed with the following: Active Criminal Records, Criminal Motions Counter, 206 Criminal Justice Center, 1301 Filbert Street, Philadelphia, PA  19107." (*See* Exs. to Resp'ts.' Resp. to Pet. for Writ of Habeas Corpus, Ex. E - PCRA Court Order Filed March 31, 1998, Ex. A.) Petitioner, however,  mailed a copy of his notice of appeal to Judge Glazer and the District Attorney, but failed to file it with the clerk of court, as required by Pa. R. App. P. 902 and Pa. R. App. P. 905. Other than petitioner's unsupported claim,[5] petitioner presents no evidence that he filed the notice of appeal with the clerk of court and the clerk's docket does not contain a such a filing.

On April 30, 1998, because he received a copy of the purported appeal, Judge Glazer instructed petitioner to file a statement of matters complained of as required under Pa. R. App. P.

---

[5] Petitioner asserted in a letter to Judge Sarmina dated January 23, 2004 that he had no direct evidence of mailing his notice of appeal to the clerk of court. Petitioner, however, does have certified mail receipts demonstrating that he mailed copies of his notice of appeal to Judge Glazer and the District Attorney's office.

1925(b).  Petitioner claims that he filed his 1925(b) statement on May 12, 1998.  Judge Glazer

issued an opinion supporting his denial of that petition on May 20, 1998.[6]

On August 31, 2000, petitioner filed a second PCRA petition claiming various *Brady*

violations based on the prosecution's withholding of exculpatory evidence that petitioner had

recently uncovered.  Specifically, petitioner alleged that he learned of the reduced sentence and

other incentives given to Joseph Thomas, a key prosecution witness, in exchange for his

testimony against petitioner.  This second PCRA petition did mention petitioner's pending appeal

of the dismissal of his first PCRA petition.  On September 5, 2000, petitioner also filed an

Application for Permission to File Supplemental Pleading and Motion to Remand to the PCRA

Court on the Basis of Newly-Discovered Evidence with reference to his pending

appeal—essentially seeking to consolidate the claims of his second PCRA petition with those of

his first.  On February 13, 2001, Judge Glazer dismissed the second PCRA petition in accordance

with Pennsylvania law due to petitioner's prior pending PCRA appeal in the Superior Court.[7]

*See Commonwealth v. Lark*, 746 A.2d 585, 588 (Pa. 2000) (holding that "subsequent PCRA

petition cannot be filed until the resolution of review of [any] pending PCRA petition").

Petitioner claims that because he did not receive a notice of the dismissal of his second PCRA

petition, Judge Glazer must have failed to send him this notice in violation of Pa. R. Crim. P.

---

[6]  The ultimate disposition by the Supreme Court on August 22, 2006 of this attempt at an appeal will be treated chronologically.

[7]  Apparently, Judge Glazer believed that the appeal of the dismissal of the first PCRA was pending based on both the copy of the notice of appeal that petitioner sent to the judge and the second PCRA petition's reference to the pending appeal.

907(4).[8]  (Objections U.S. Magistrate Judge's Report and Recommendation to Pl./Pet'r's Writ of

Habeas Corpus 5.)  No appeal was filed.

On June 16, 2003, through counsel, petitioner filed a third PCRA petition based on newly

discovered evidence of prosecutorial misconduct and *Brady* violations, both of which allegedly

occurred at petitioner's original trial.  On October 31, 2003, petitioner added a claim of

ineffective assistance of counsel in a supplemental petition.  In neither pleading, did petitioner

allege specifically that he had a pending appeal of the dismissal of his first PCRA petition.[9]

Sometime later, petitioner's counsel learned that the Superior Court had not yet received

petitioner's appeal concerning his first PCRA petition.  On January 26, 2004, petitioner filed a

motion to compel the clerk of court to transmit that appeal to the Superior Court.  Petitioner

claimed that because he had proof of mailing a copy of the notice of appeal to Judge Glazer, he

therefore must have mailed it to the clerk of court, who then failed to transmit the appeal to the

Superior Court.  Alternatively, petitioner claimed that mailing the appeal to Judge Glazer

constituted substantial compliance with the rules of appellate procedure and that this compliance

warranted transmitting the appeal.  On the same day petitioner filed this motion, the Honorable

---

[8]  In relevant part, the rule states:
> (4) When the petition is dismissed without a hearing, the judge shall issue an
> order to that effect and shall advise the defendant by certified mail, return
> receipt requested, of the right to appeal from the final order disposing of the
> petition and of the time within which the appeal must be taken.

Pa. R. Crim. P. 907(4) (2009).

[9]  Confusingly, although petitioner did not explicitly discuss his first PCRA petition, he
did state that Judge Glazer dismissed his second PCRA petition "pending appeal to Superior
Court." (Exs. to Resp'ts.' Resp. to Pet. for Writ of Habeas Corpus, Ex. H - Pet. for Relief Under
PCRA ¶ 11.)

M. Teresa Sarmina granted it and also dismissed petitioner's third PCRA petition due to the prior pending appeal. The Commonwealth moved to quash the appeal, arguing that Judge Sarmina lacked jurisdiction to restore petitioner's appellate rights as to the dismissal of his first PCRA petition.

On August 22, 2006, the Superior Court quashed petitioner's appeal of his first PCRA petition. The court treated petitioner's motion to transmit his appeal as "essentially a *nunc pro tunc* appeal from the dismissal of [petitioner's] first PCRA [p]etition." *Commonwealth v. Ivey*, No. 826 EDA 2004, slip op. at 3 (Pa. Super. Ct. Aug. 22, 2004). Consequently, the court assessed the motion's timeliness under the PCRA, "the sole means for restoration of PCRA appellate rights." *Id.* The court determined that because the petition before it sought reinstatement of petitioner's appellate rights, but was filed on January 26, 2004, the petition was patently untimely by virtue of the statute of limitations. 42 Pa. Cons. Stat. Ann. § 9545(b)(1) (setting limitations period for PCRA claims at one year beginning from date conviction became final). The court then looked to an exception to this limitations period under § 9545(b)(1)(i), which was invoked by petitioner's claim of governmental interference due to the failure of the clerk of court to transmit his notice of appeal to the Superior Court. The court found that for the motion to be timely under the exception petitioner needed to bring his motion within sixty days of learning that the government interfered with his right to appeal. 42 Pa. Cons. Stat. Ann. § 9545(b)(2). The court found that assuming *arguendo* that the clerk of court did fail to transmit petitioner's appeal to the Superior Court in 1998, petitioner had not specified in his petition filed on January 26, 2004 when he learned of this failure to transmit. Consequently, petitioner could not establish that he filed his request for reinstatement of his appellate rights within sixty days of

-7-

learning of this assumed governmental interference.  Therefore, the request was not timely and Judge Sarmina lacked jurisdiction to reinstate petitioner's appellate rights.  As petitioner had long since lost his right to appeal the dismissal of the first PCRA petition, the Superior Court quashed the appeal.  On November 20, 2006, the Superior Court denied petitioner's request for a rehearing en banc.

On November 18, 2006, petitioner filed pro se this petition for a writ of habeas corpus and raised these claims:

(1)    The Commonwealth violated *Brady* by failing to disclose to the defense that the prosecution granted favors to its chief witness and to another witness, Joseph and Marshall Thomas, in exchange for their testimony;

(2)    The prosecutor committed a *Brady* violation by failing to disclose that one of the Commonwealth's witnesses, Rebecca Harvey, did not identify petitioner at his co-defendant's earlier trial;

(3)    The state courts violated his due process rights by failing to give notice in connection with his claim of ineffective assistance of trial and appellate counsel, thus foreclosing his appellate rights;

(4)    The state courts violated his due process rights by denying him an evidentiary hearing as to the newly discovered evidence and recantations of Joseph and Marshall Thomas and the implication of prosecutorial misconduct arising out of those recantations;

(5)    Trial and appellate counsel provided ineffective assistance because they failed to investigate and call certain witnesses;

(6)    Trial and appellate counsel provided ineffective assistance because they failed to rebut the testimony of Joseph Thomas that the robbery was planned at Richard Phelps's home;

(7)    Trial and appellate counsel provided ineffective assistance because they failed to elicit key prior inconsistent statements of Joseph Thomas;

(8)    Trial and appellate counsel provided ineffective assistance because they failed to elicit testimony from Richard Phelps that he never implicated

petitioner in an interview with a newspaper reporter about the robbery;

(9)     Trial and appellate counsel provided ineffective assistance because they failed to investigate the notes of testimony from the trials of his co-defendants Phelps and Robinson;

(10)    Trial and appellate counsel provided ineffective assistance because they failed to object to the trial court's statement concerning the penalty for second-degree murder, specifically the court's statement that the crime could carry a sentence of less than life imprisonment, and as a result, petitioner did not knowingly and voluntarily waive his right to a jury trial;

(11)    Trial and appellate counsel provided ineffective assistance by coercing petitioner to testify to advance the defense of renunciation, when petitioner told counsel that he never joined the conspiracy, was merely present, and even warned the co-defendants not to commit the robbery;

(12)    Trial and appellate counsel provided ineffective assistance because they failed to persist in objecting to the rebuttal testimony of Marshall Thomas because the prosecution had not provided his statement in discovery; and

(13)    Trial and appellate counsel provided ineffective assistance because they failed to cross-examine Joseph Thomas concerning his probationary status and past criminal record.

After this court referred the matter to Magistrate Judge Caracappa, respondents objected to the petition as untimely and thus not entitled to review.  On April 30, 2007, Judge Caracappa issued a Report and Recommendation ("R&R") that the court should dismiss the petition as untimely. Following several motions from petitioner for an extension of time to file a response to the R&R, on October 18, 2007 this court placed the matter in suspense until petitioner filed his response. Petitioner eventually filed objections to the R&R, followed by supplemental objections and a motion to rebut the state court's determination of facts.  Respondents replied to the initial and supplemental objections.

## II.     Discussion

Petitioner argues that statutory and equitable tolling make his habeas petition timely. Petitioner maintains that his timely-filed PCRA petitions toll AEDPA's limitations period and the PCRA court's failure to transmit his appeal relating to his first PCRA petition also excuses his delay in filing his habeas petition. Respondents contend that statutory tolling can not apply to petitioner's improperly filed appeal and that petitioner has not provided sufficient justification for equitable tolling. As discussed below, this court finds that both AEDPA's scope and its statute of limitations preclude petitioner's claims, despite considerations of applicable statutory or equitable tolling.

### A.      Jurisdiction and Standard of Review

This court exercises jurisdiction over this habeas petition under 28 U.S.C. § 2254(a). Where a habeas petition has been referred to a magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), this court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). After conducting such a review, this court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

### B.      Claims Not Cognizable in Habeas Petition

A "district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[T]he federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas

calculation." *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) (holding that habeas petition does not constitute proper remedy for constitutional violations that occurred during post conviction proceeding); *see also Mason v. Meyers*, 208 F.3d 414, 417 (3d Cir. 2000) (rejecting claim of due process violation in collateral proceeding as basis for habeas claim); *Taylor v. Carroll*, No. Civ.A. 05-30-KAJ, 2006 WL 278542, at *2 (D. Del Feb. 6, 2006) (dismissing habeas claims based on events in collateral proceedings).

Claims three and four concern due process violations that allegedly occurred in the process of seeking postconviction relief.  In claim three, petitioner alleges that the state courts denied his due process right to appeal during his PCRA proceeding, in which petitioner sought redress for ineffective assistance of trial and appellate counsel.  In claim four, petitioner alleges that, presumably during PCRA proceedings, state courts denied him an evidentiary hearing concerning newly discovered evidence, specifically trial witnesses' recantations.  Because both of these claims concern what occurred during petitioner's pursuit of relief under the PCRA, a collateral proceeding, these claims do not properly belong in a habeas petition.  *See, e.g.*, *Braxton v. Lawler*, Civil Action No. 07-4200, slip op. at 9, 2008 WL 4762764, at *11 (E.D. Pa. Oct. 29, 2008) (finding that petitioner's allegation that "PCRA court erred in refusing to schedule a hearing on . . . after-discovered [recantation] evidence" constituted a "collateral proceeding claim [that] is not cognizable in a habeas petition").  Because under AEDPA the court can not consider these claims, the court will dismiss them as not cognizable.

## C.     AEDPA's Statute of Limitations

The court may not consider the merits of the claims in this petition for a writ of habeas corpus, unless the petition is timely.  AEDPA sets forth a one year limitations period for habeas

corpus petitions.  28 U.S.C. § 2244(d)(1).  Where a state prisoner seeks federal habeas relief for a conviction occurring before April 24, 1996, the effective date of the statute, the limitations period begins then and petitioner must file his habeas petition within one year, i.e. by April 23, 1997.  *Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998).

AEDPA also sets out several alternative start dates for the running of this one-year statutory period, the applicability of which depends on the circumstances of the case.  28 U.S.C. § 2244(d)(1).  Petitioner does not present any claim based on either state action in violation of the Constitution or a federal statute that prevented him from filing his habeas petition or a newly recognized constitutional right made retroactively applicable; therefore, two of the exceptions do not apply.[10]  If a habeas petitioner bases his claim on newly discovered evidence, the limitations period begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  *Id.* § 2244(d)(1)(D).  AEDPA's limitations period, "like other statute of limitations provisions, must be applied on a claim-by-claim basis."  *Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004).  The limitations period for any particular claim begins to run from the latest of the applicable starting dates.  28 U.S.C. § 2244(d)(1).

Petitioner's conviction became final when the time to appeal the Superior Court's decision to affirm his sentence expired, on May 19, 1984, *see* Pa. R. App. P. 1113(a) (requiring appeals to Pennsylvania Supreme Court to be filed no later than thirty days from intermediate

---

[10]  *See* 28 U.S.C. § 2244(d)(1)(B) (providing start date of limitations period begins at time of removal of impediment to filing application for petition, where impediment created by state action in violation of Constitution or laws of United States); *id.* § 2244(d)(1)(C) (providing start date of limitations period for claims based on constitutional right newly recognized and deemed retroactively applicable by Supreme Court).

appellate court's order), well before AEDPA's effective date of April 24, 1996. Except for petitioner's first claim, none of petitioner's claims relies on newly discovered facts; therefore, no alternative start date applies to them and petitioner needed to bring these claims by April 23, 1997 to comply with AEDPA's limitations period.

Petitioner's bases his first claim, on a newly discovered factual predicate, specifically the recantations of their trial testimony by Joseph Thomas, a co-conspirator and key Commonwealth witness, and Marshall Thomas. "Section 2244(d)(1)(D) provides a petitioner with a later accrual date than section 2244(d)(1)(A) only if vital facts could not have been known." *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004) (quotation and citation omitted); *see also McAleese v. Brennan*, 483 F.3d 206, 214 (3d Cir. 2007) (defining factual predicate, as used in § 2244(d)(1)(D), as vital facts); *Eckles v. Erickson*, Civil Action No. 06-1870, slip op. at 16-17, 2009 WL 292585, at *7-*8 (E.D. Pa. Feb. 5, 2009) (finding 2244(d)(1)(D) inapplicable because petitioner did not explain why he could not have discovered evidence earlier). On April 17, 2003, petitioner learned of Thomas's intention to recant his testimony, through Thomas's sister, who contacted petitioner in prison. (Exs. to Resp'ts.' Resp. to Pet. for Writ of Habeas Corpus, Ex. H - Pet. for Relief Under PCRA ¶ 20.) As an incarcerated individual, petitioner arguably had no way of learning of Thomas's recantation any earlier. *Cf. Eckles*, slip op. at 16, 2009 WL 292585, at *8 (noting petitioner knew of witness's desire to recant even before trial). Assuming, without deciding, that petitioner could not have known of this fact vital to claim one before April 17, 2003, AEDPA's limitations period for this claim started to run on that date.

-13-

Petitioner filed his habeas petition on November 18, 2006,[11] well over one year after the start dates for any of his claims.  Consequently, petitioner failed to bring any of his claims within AEDPA's one year limitations period unless tolling of the limitations period applies.

Regardless of the start date of any claim, the limitations period is subject to two tolling exceptions: (1) statutory tolling, for the time a "properly filed" application for state post conviction review is pending in state court, 28 U.S.C. § 2244(d)(2); and (2) equitable tolling, a judicially-crafted exception.  *Merritt v. Blaine*, 326 F.3d 157, 161 (3d Cir. 2003) (citing *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999)).

### 1.    Statutory Tolling

Although statutory tolling applies to this habeas petition, this tolling does not suffice to make the petition timely.   AEDPA expressly tolls its one-year statute of limitations for the "time during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2) (emphasis added).  A state collateral petition qualifies as "properly filed," and thus while pending tolls AEDPA's statute of limitations, "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings."  *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (footnote omitted); *see Swartz v. Meyers*, 204 F.3d 417, 420 (3d Cir. 2000) (tolling limitations period for time during which PCRA petition is pending).  Applicable laws include those concerning "the

---

[11]   The Third Circuit has held "that a pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court."  *Burns*, 134 F.3d at 113.  Because petitioner signed his original habeas petition on November 18, 2006, the court will presume that on that same day he delivered the petition to prison officials to mail to the district court and will adopt that as the filing date for the habeas petition.  *See Evans v. Carroll*, No. Civ. 03-947-SLR, 2005 WL 196554, at *2 (D. Del. Jan 19, 2005) (presuming that petitioner handed habeas petition to prison officials, and thus filed it, when petitioner dated petition).

-14-

form of the document, the time limits upon its delivery, *the court and office in which it must be lodged*, and the requisite filing fee." *Artuz*, 531 U.S. at 8 (emphasis added) (footnote omitted); *see Satterfield v. Johnson*, 434 F.3d 185, 192 (3d Cir. 2006) ("Untimely filing, absence of jurisdiction, failure to pay fees, and failure to obtain a requisite certificate of appealability are all examples of flaws going to the application for relief itself."), *cert. denied*, 549 U.S. 947 (2006).

For the purposes of statutory tolling, the federal district court must defer to the state court's determination of whether a state postconviction petition is timely or otherwise properly filed under state law. *See Merritt*, 326 F.3d at 165-66. Thus, if a petitioner files an out of time application and the state court dismisses it as time barred, then a federal court must deem the application not "properly filed" for tolling purposes. *Id.* Because state court rulings on questions of state law are binding in federal habeas proceedings, *Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004), a state court determination of untimeliness, like any other determination of state law, is not properly subject to second-guessing on federal habeas review. *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (concluding that when state court rules that document not properly filed, "'that [is] the end of the matter' for purposes of § 2244(d)(2)" (quoting *Carey v. Saffold*, 536 U.S. 214, 227 (2002) (alteration in original)). Moreover, for state court findings of procedural compliance at the trial and postconviction level, the court "should . . . accord[] those findings a presumption of correctness, and place[] the burden on [the petitioner] to come forward with clear and convincing evidence to the contrary." *Washington v. Sobina*, 509 F.3d 613, 622-623 (3d Cir. 2007) (footnote omitted). For a properly filed state petition, however, the court must consider it pending under § 2244(d)(2) both during the time a state court reviews the petition and, following a decision on the petition, the time for seeking an appeal of the decision, regardless of whether

-15-

the petitioner actually appeals.  *Swartz*, 204 F.3d at 424.  Unlike the start date for AEDPA's

limitations period, which the court determines on a claim-by-claim basis, tolling applies to the

entire habeas petition provided the state proceeding attacks the same judgment as the habeas

petition does.  *Sweger v. Chesney*, 294 F.3d 506, 520 (3d Cir. 2002) (holding "that under §

2244(d)(2) . . . [statutory tolling applies] whether the federal habeas petition contains one or

more of the claims raised in the state proceeding, . . . as long as the state proceeding and the

federal habeas petition attack the same judgment").

　　　　Respondents concede that petitioner properly filed his first PCRA petition, but the parties

dispute how long that petition remained pending and thus how long it tolled the AEDPA

limitations period.  When petitioner filed his first PCRA petition on January 8, 1997, 259 days of

the AEDPA limitations period had elapsed for those claims for which the period started to run on

April 24, 1996.  On April 7, 1998, the PCRA court denied petitioner's motion for rehearing.  The

time for appeal ended thirty days later, on May 7, 1998, after which, assuming petitioner did not

file an appeal, the first PCRA petition was no longer pending and AEDPA's limitations period

was no longer tolled.  Accordingly, 106 days later, on August 21, 1998, the AEDPA limitations

period expired, unless petitioner filed an appeal.

　　　　In objecting to the R&R, petitioner contends that because he properly filed a timely first

PCRA petition and related appeal, the limitations period was tolled until the Superior Court

quashed that appeal on August 22, 2006.  Respondents argue that petitioner did not properly file

an appeal and statutory tolling ended, May 7, 1998.  The Superior Court treated petitioner's

motion to transmit his appeal filed January 26, 2004 as "essentially a nunc pro tunc appeal from

the dismissal of [petitioner's] first PCRA [p]etition."  *Ivey*, No. 826 EDA 2004, slip op. at 3.  In

-16-

viewing petitioner's motion as seeking a reinstatement of appellate rights, the Superior Court had to have determined that petitioner lost his appellate rights due to petitioner's failure to file an appeal with the clerk of court, otherwise there would not have been a necessity to reinstate the appeal.  To counter the Superior Court's determination, petitioner presents evidence that he mailed his notice of appeal to the PCRA court (the judge) via certified mail and that he received back from the judge an order to prepare a statement of matters complained of on appeal.  As a result, petitioner argues, the clerk of court must have received his notice of appeal, as well, even though petitioner has no proof of mailing the notice to the clerk and no proof the clerk received it.  Alternatively, petitioner claims that because he complied substantially with the state rules of procedure, albeit not perfectly, he properly filed the appeal.

Petitioner has not presented clear and convincing evidence that he submitted a properly filed appeal because petitioner can not prove that he delivered his notice of appeal to the clerk, an essential procedural requirement.  Without clear and convincing evidence to the contrary, this court must accept the Superior Court's determination that the petitioner did not appeal the dismissal of his first PCRA petition.  *Washington*, 509 F.3d at 622-623.  Moreover, the court can not statutorily toll AEDPA's limitations period for the time petitioner's request for appeal nunc pro tunc was pending because the court ruled the request untimely, and thus not properly filed. *See Douglas v. Horn*, 359 F.3d 257, 262 (3d Cir. 2004) (holding that improperly filed nunc pro tunc appeal does not toll AEDPA's limitations period).  Because petitioner did not file an appeal, the first PCRA petition was no longer pending after May 7, 1998.  As a result, for those claims with an April 24, 1996 start date, the limitations period expired August 21, 1998.  Because petitioner filed his habeas petition on November 18, 2006, over eight years later, petitioner did

not bring these claims within AEDPA's limitations period.

Petitioner also argues that his second and third PCRA petitions entitle him to statutory tolling. Petitioner filed these petitions well after August 21, 1998, when the limitations period expired for all claims except claim one. Therefore, these PCRA petitions can not affect the timeliness of claims two and five through thirteen. *See Galloway v. Hendricks*, Civil Action No. 04-350 (AET), 2006 WL 2224417, at *2 (D.N.J. Aug. 2, 2006) (finding that properly filed state postconviction relief petition can not toll AEDPA's limitations period once period has expired).

As explained above, for claim one the court assumes the limitations period began April 17, 2003. On June 13, 2003, petitioner, represented by counsel, filed his third PCRA petition, at which point 57 days of the AEDPA limitations period had elapsed. This petition was ultimately dismissed because the PCRA court found there was a pending appeal. Even assuming this third PCRA petition was properly filed,[12] it tolled the limitations period on claim one only until the court dismissed the petition on January 26, 2004.[13] Thus, once the third PCRA petition was no longer pending, petitioner had 308 days, until November 29, 2004, to file a timely federal habeas petition for his first claim. Because petitioner filed his habeas petition almost two years later, this claim is not timely. Consequently, only equitable tolling can make any of the claims in this habeas petition timely.

---

[12] Under the PCRA, a petitioner must file any claim of newly discovered evidence within 60 days of when the petitioner could have learned of the evidence. 42 Pa. Cons. Stat. Ann. § 9545(b)(2).

[13] As noted above, petitioner can not obtain statutory tolling based on his motion to compel the clerk of court to transmit his appeal regarding his first PCRA petition to the Superior Court because the Superior Court considered it a nunc pro tunc appeal. *See Douglas*, 359 F.3d at 262.

## 2.     Equitable Tolling

Petitioner argues, contrary to the R&R's findings, that equitable tolling applies to his habeas petition on the basis of extraordinary circumstances.  Respondents maintain that this case presents no extraordinary circumstances and that petitioner did not exercise reasonable diligence in bringing his habeas claims within AEDPA's limitations period.

The Third Circuit has held that equitable tolling applies to habeas petitions because AEDPA's one-year period for timely filing constitutes a statute of limitations, not a jurisdictional bar.[14]  *Miller v. N.J. State Dep't of Corr.*, 145 F.3d 616, 617-18 (3d Cir. 1998).  "Equitable tolling is available 'only when the principle of equity would make the rigid application of a limitation period unfair.'"  *Merritt*, 326 F.3d at 168 (quoting *Miller*, 145 F.3d at 618).  Accordingly, courts should use equitable tolling sparingly, *see United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998), and apply it "only in the rare situation where [it] is demanded by sound legal principles as well as the interests of justice," *LaCava v. Kyler*, 398 F.3d 271, 275 (3d Cir. 2005).  Thus, the Third Circuit has set forth "two general requirements for equitable tolling: (1) that 'the petitioner has in some extraordinary way been prevented from asserting his or her rights;' and (2) that the petitioner has shown that 'he or she exercised reasonable diligence in investigating and bringing [the] claims.'"  *Merritt*, 326 F.3d at 168 (quoting *Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001)); *see also Lawrence*, 549 U.S. at 336 (stating that litigant seeking

---

[14]  The United States Supreme Court has not yet decided whether equitable tolling is available in the context of a federal habeas corpus petition.  *See Lawrence v. Florida*, 549 U.S. 327, 336 (2007) ("We have not decided whether § 2244(d) allows for equitable tolling. . . . [We] assume without deciding that it is [available]."); *Pace*, 544 U.S. at 418 n.8 ("We have never squarely addressed the question whether equitable tolling is applicable to AEDPA's statute of limitations.").

equitable tolling "must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing" (quoting *Pace*, 544 U.S. at 418)).

### a.    Extraordinary Circumstances

In justifying his request for equitable tolling, petitioner identifies four extraordinary circumstances: the PCRA judge's alleged misleading of petitioner into thinking he had a pending appeal of the dismissal of his first PCRA petition, when in fact he did not; the failure of his attorney to file an appeal of the dismissal of his first PCRA petition; the *Brady* violations committed at his trial; and his actual innocence.  In this circuit, for equitable tolling to apply, "a causal relationship must exist between any extraordinary circumstances and petitioner's failure to file in a timely fashion."  *St. George v. Dist. Attorney of Phila.*, Civil Action No. 00-1716, slip op. at 4, 2009 WL 855810, at *3 (E.D. Pa. Mar. 30, 2009) (citing *Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003)).  Courts have noted that often extraordinary circumstances that justify equitable tolling are events beyond the petitioner's control that impede the petitioner from filing his habeas claim.  *See Garrick v. DiGuglielmo*, 162 Fed. App'x 122, 124-125 (3d Cir. 2005) (finding circumstances not extraordinary because none "prevented [petitioner] from filing a timely petition"); *Simmons v. Yukins*, No. Civ. 01-CV-71287-DT, 2001 WL 739505, at *2 (E.D. Mich. May 9, 2001) ("To establish the extraordinary circumstances . . . , a habeas petitioner must prove that the cause of his delay was both beyond his control and unavoidable. . . .").  The Third Circuit has found equitable tolling warranted where the court has misled the petitioner regarding the steps the petitioner needed to take to preserve a claim.  *Brinson v. Vaughn*, 398 F.3d 225, 230 (3d Cir. 2005).

Petitioner appears to argue that he failed to file a timely habeas petition because the PCRA judge's conduct led him to believe he had an appeal of his first PCRA petition pending from April 27, 1998 to August 22, 2006.  The record before the court confirms petitioner sent a copy of his notice of appeal of the dismissal of his first PCRA petition to Judge Glazer on April 27, 1998.  The record, however, contains no evidence that petitioner filed a notice of appeal with the clerk of court, as required to perfect an appeal, other than petitioner's unsupported claim that he did so by regular mail, even though he sent a copy of the notice by certified mail to the PCRA judge and the district attorney.  The clerk's docket has no record of such filing and the Superior Court found that no notice of appeal was filed.[15]  Nevertheless, on April 30, 1998, in a letter to petitioner, Judge Glazer acknowledged receipt of the notice of appeal and instructed petitioner to file a statement of matters complained of pursuant to Pa. R. App. P. 1925(b), which, according to petitioner, he did on May 12, 1998.  On May 20, 1998, the PCRA court filed an opinion affirming the dismissal of petitioner's first PCRA petition.

According to petitioner, as a result of Judge Glazer's instruction to file a 1925(b) statement and Judge Glazer's opinion pursuant thereto, he believed that he had a pending appeal of his first PCRA petition.  Petitioner noted this pending appeal in his second and third PCRA

---

[15]  Petitioner also argues, somewhat tangentially, that Judge Glazer should have transmitted his notice of appeal to the clerk of court. Petitioner bases his argument on Pennsylvania Rule of Appellate 905(a), which, in relevant part, states:

> If a notice of appeal is mistakenly filed in an appellate court, or is otherwise filed in an incorrect office within the unified judicial system, the clerk shall immediately stamp it with the date of receipt and transmit it to the clerk of the court which entered the order appealed from.

Petitioner's argument fails because Rule 905(a) applies only to clerks, not judges.  Judge Glazer had no obligation to transmit the appeal under Rule 905(a).

petitions.  (Mem. of Law in Support of Transmitting Pet'r.'s PCRA Appeal to Prothonotary of Superior Ct. for Docketing 3).  When Judge Sarmina ordered his appeal transmitted to the Superior Court, almost six years later on January 26, 2004, petitioner also thought he had a pending appeal.  Petitioner alleges that only after the Superior Court's August 22, 2006 decision that quashed his appeal of the dismissal of his first PCRA claim did he realize that no appeal was pending.

In light of the above, the court finds that the PCRA court did not mislead petitioner.  The clerk of court made no representation to petitioner at all about an appeal of the dismissal of his first PCRA petition and, in fact, took no action at all because no appeal was lodged with the clerk.  Moreover, Judge Glazer merely followed the rules of appellate procedure as applied to him when, upon receipt of a copy of the purported notice of appeal, he ordered petitioner to file a 1925(b) statement and issued an opinion supporting his dismissal of the appeal, none of which were dependent on the clerk of court filing the notice of appeal.  Petitioner had no reason to rely on Judge Glazer's conduct to assure him that the clerk of court had received and filed his notice of appeal, when in fact it had not, nor forwarded it to the Superior Court.  In short, petitioner cannot conclude from this conduct that the PCRA court misled him.

Turning to petitioner's attorney's alleged failure to appeal the dismissal of the first PCRA petition, "attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to . . . 'extraordinary' circumstances."  *Fahy*, 240 F.3d at 244; *see also Lawrence*, 549 U.S. at 336 ("Attorney miscalculation is simply not sufficient to warrant equitable tolling . . . .").  Petitioner claims that the attorney who filed his first PCRA petition abandoned him when it came time to file an appeal, forcing petitioner to proceed pro se, and that this extraordinary

-22-

circumstance justifies equitable tolling.  To the contrary, petitioner does not allege, let alone

establish, serious attorney misconduct, such as lying or persistent neglect, that typically warrants

equitable tolling.  *See Schlueter*, 384 F.3d at 76 (distinguishing affirmative misrepresentation

from failure to keep promise); *Spitsyn v. Moore*, 345 F.3d 796, 801-02 (9th Cir. 2003) (noting

attorney's failure to respond at all to repeated contact from client).  Moreover, because in support

of this claim petitioner offers nothing more than a "conclusory and unsupported statement

regarding [his] counsel's alleged failure," he has not put forth "the type of 'egregious behavior' .

. . necessary to trigger equitable tolling."  *Harrison v. Ryan*, Civil Action No. 06-434-GMS, slip

op. at 7, 2008 WL 4377791, at *4 (D. Del. Sept. 23, 2008).  Consequently, the conduct of

petitioner's attorney does not constitute an extraordinary circumstance to warrant equitable

tolling.

　　　　To the extent petitioner makes allegations of prosecutorial misconduct that occurred at his

trial, petitioner tries to use the merits of his habeas petition as the basis for an extraordinary

circumstance that justifies equitable tolling.  Unless germane to the reason for the untimely

filing, the merits of the habeas petition, however valid, can not constitute an extraordinary

circumstance that warrants equitable tolling.  *See Sch. Dist. of Allentown v. Marshall*, 657 F.2d

16, 20 (3d Cir. 1981) ("The tolling exception is not an open-ended invitation to the courts to

disregard limitations periods simply because they bar what may be an otherwise meritorious

cause."); *Brown v. Klem*, No. Civ. A. 05-824, 2006 WL 263607, at *7 (E.D. Pa. Feb. 1, 2006)

(rejecting petitioner's argument that undisputedly meritorious claim constitutes extraordinary

circumstance to justify equitable tolling).  Consequently, allegations of prosecutorial misconduct

can not constitute an extraordinary circumstance that justifies equitable tolling.

### b.      Actual Innocence

Petitioner also argues that equitable tolling should extend the limitations period based on the extraordinary circumstance of his actual innocence.  "The Third Circuit has not yet decided whether a claim of actual innocence may equitably toll the one-year filing period under 28 U.S.C. § 2244(d)."  *McKeever v. Warden SCI-Graterford*, 486 F.3d 81, 84 n.5 (3d Cir. 2007), *cert. denied*, 128 S. Ct. 538 (2007).[16]  Nevertheless, courts in this circuit have assumed that a successful actual innocence claim can satisfy the "extraordinary circumstances" requirement and justify equitable tolling, provided the petitioner meets the diligence requirement.  *See Horning v. Lavan*, 197 Fed. App'x 90, 94 (3d Cir. 2006) (assuming actual innocence could equitably toll AEDPA's one-year filing period if petitioner could meet diligence requirement); *Eckles*, slip op. at 14, 2009 WL 292585, at *7 (assuming successful showing of actual innocence could trigger equitable tolling, provided petitioner could meet diligence requirement).

"'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  The petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324

---

[16]  The courts of appeals for the Sixth and Tenth Circuits have held that an actual innocence claim may toll AEDPA's limitations period.  *Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005); *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000).  Other courts of appeals have at least suggested the possibility that an actual innocence claim may toll AEDPA's limitations period.  *Felder v. Johnson*, 204 F.3d 168, 171 & n.8 (5th Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000); *Gildon v. Bowen*, 384 F.3d 883, 887 (7th Cir. 2004), *cert. denied*, 543 U.S. 1168 (2005); *Flanders v. Graves*, 299 F.3d 974, 978 (8th Cir. 2002), *cert. denied*, 537 U.S. 1236 (2003).  The First Circuit Court of Appeals has held that an actual innocence claim can not toll AEDPA's limitations period.  *David v. Hall*, 318 F.3d 343, 347 (1st Cir. 2003), *cert. denied*, 540 U.S. 815 (2003).

(1995); *see Knecht v. Shannon*, 132 Fed. App'x 407, 409 (3d Cir. 2005) (applying *Schlup*

standard to actual innocence claim asserted as extraordinary circumstance warranting equitable

tolling).  Further, the petitioner must demonstrate that "in light of the new evidence, no juror,

acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Sweger*, 294

F.3d at 522 (quotation and citations omitted).

      Petitioner contends that the recantations of trial witnesses, when viewed in combination

with alleged prosecutorial misconduct and alleged ineffective assistance of trial counsel, provide

new, reliable evidence, in light of which no reasonable juror would have voted to convict him.

Although petitioner does not identify these recantations, presumably he refers to affidavits from

Joseph Thomas and Marshall Thomas, in which both recant their testimony at petitioner's trial.

(Exs. to Resp'ts.' Resp. to Pet. for Writ of Habeas Corpus, Ex. H - Pet. for Relief Under PCRA,

Exs. A & B.)  Specifically, petitioner's co-conspirator Joseph Thomas states that he falsely

testified at petitioner's trial as part of a deal with the prosecution for a reduced sentence.  Joseph

Thomas further states that petitioner did not serve as a "lookout" for the robbery, but rather

merely accompanied the other four conspirators.  Marshall Thomas states that he also testified

falsely at petitioner's trial.  He further states that he told police petitioner had nothing to do with

the robbery, but testified to the contrary at trial to ensure his brother received his deal for a

reduced sentence.

      The above recantations do not suffice to show petitioner's actual innocence.  Affidavits

of recantation do not fall into any type of reliable evidence—exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence—identified in *Schlup*.  513 U.S. at

324.  Moreover, the "cases are legion that courts look upon recantations with great suspicion."

*United States v. Williams*, 70 Fed. App'x 632, 634 (3d Cir. 2003). "Recantation testimony is inherently untrustworthy." *Braxton*, slip op. at 8-9, 2008 WL 4762764, at *6. The court also finds persuasive the Pennsylvania Supreme Court's conclusion that a "recantation [that] involves an admission of perjury . . . is the least reliable form of proof." *Commonwealth v. Henry*, 706 A.2d 313, 321 (Pa. 1997).

Here, not only does petitioner's new evidence consist of nothing but recantations, but those recantations involve admissions of perjury from both Joseph and Marshall Thomas. This suspicious and untrustworthy testimony can not provide the reliable evidence that demonstrates that no reasonable juror would have voted to convict petitioner. Moreover, this weak evidence can not overcome petitioner's own trial testimony in which he admitted to entering the store and telling the other conspirators "it's not cool," an equivocal statement that at least one juror could reasonably interpret as inculpatory in showing petitioner's intent to help identify the opportune time to commit the robbery. Because petitioner lacks the evidentiary support for a claim of actual innocence, the court can not grant equitable tolling on this basis.

### c.    Reasonable diligence

Even if the court assumes petitioner has successfully shown an extraordinary circumstance in the state court's misleading him about his pending appeal, he has not demonstrated reasonable diligence in pursuing his habeas claims. "Due diligence does not require 'the maximum feasible diligence,' but it does require reasonable diligence [under] the circumstances." *Schlueter*, 384 F.3d at 74. "Mere excusable neglect is not sufficient." *Miller*, 145 F.3d at 619. "This obligation [to exercise reasonable diligence] does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period

appellant is exhausting state court remedies as well." *LaCava*, 398 F.3d at 277.  Finally,

petitioner bears the burden of proving he exercised reasonable diligence.  *See Urcinoli v. Cathel*,

546 F.3d 269, 277 (3d Cir. 2008).

Petitioner argues that given that he is incarcerated, he has demonstrated reasonable

diligence as shown by: his dedication to uncovering evidence of his innocence; his pursuit of

every avenue of postconviction relief; and his rigorous investigation of applicable law on

postconviction relief.  The record suggests otherwise, even when viewed in a light favorable to

petitioner.  Even if the Superior Court had found, which it did not, or if this court would find,

that petitioner did file a notice of appeal of the dismissal of his first PCRA petition with the clerk

of court on April 27, 1998, petitioner thereafter did not inquire about the status of this appeal.  In

fact, after submitting his 1925(b) statement, for the next twenty-seven months petitioner took no

further action at all until petitioner filed a second PCRA petition on August 31, 2000.  From that

point, assuming, as petitioner claims, that Judge Glazer then failed to send petitioner a notice of

dismissal of his second PCRA petition, petitioner received no communication from the court on

either PCRA petition.  Nevertheless, for almost the next three years petitioner still did not bother

at all to check the status of either action.  In fact, petitioner took no action whatsoever until he

filed his third PCRA petition on June 13, 2003.  Only at some unspecified time thereafter did

petitioner realize, with the help of counsel, that the appeal of the dismissal of the first PCRA

petition never reached the Superior Court.  Only sometime even later did petitioner file a motion

to compel the clerk of court to transmit the appeal to the Superior Court on January 26, 2004,

almost six years after he claims he originally filed the appeal.

In short, petitioner does not dispute that after sending his notice of appeal, petitioner

never called or wrote to the Superior Court or the clerk of court or anyone affiliated with the court to inquire as to the status of his appeal[17] for over five years.[18]  Because during this extended stretch of time petitioner did not actively attend to his first PCRA petition, he did not exercise the reasonable diligence required for equitable tolling.  *See LaCava*, 398 F.3d at 272 (holding that petitioner did not exercise reasonable diligence because he failed to inquire about pending appeal's timeliness for twenty-one months, even though court did not send notice of dismissal of appeal to petitioner); *McKeithan v. Varner*, 108 Fed. App'x 55, 59 (3d Cir. 2004) (concluding that two periods of complete inactivity—for about four and six months respectively—in pursuing postconviction relief meant petitioner did not exercise reasonable diligence to justify equitable tolling); *Nelson v. Superintendent of SCI-Huntingdon*, Civil Action No. 07-1453, slip op. at 11-12, 2009 WL 918097, at *5-*6 (W.D. Pa. Apr. 2, 2009) (concluding that petitioner did not exercise reasonable diligence where petitioner only provided unsupported and unspecified allegations that he periodically checked status of his pending appeal, which turned out not to have been filed); *cf. St. George*, slip op. at 6, 2009 WL 855810, at *4 (finding petitioner exercised reasonable diligence where petitioner "consistently inquired of and corresponded with the Clerk's office to check on the status of his case . . . [beginning] less than one month after he filed his pro se notice of appeal").

Petitioner exercised a similar lack of diligence in pursuit of his claims based on newly

---

[17]  Petitioner may have even failed to tell his attorneys about his appeal of the dismissal of his first PCRA petition as they failed to mention it explicitly in the third PCRA petition.

[18]  This represents the time between the last court action on his appeal, Judge Glazer's May 20, 1998 opinion, and when petitioner concedes he learned that no appeal was pending, sometime in the latter half of 2003.

discovered evidence.  Petitioner brought these claims in his second and third PCRA petitions,

which were both dismissed.  Petitioner fails to present any evidence that he took any appeals of

these dismissals, which he knew about, as he referred to them in later submissions.[19]  Moreover,

following the dismissal of his third PCRA petition on January 26, 2004, petitioner took no

further action on the newly-discovered evidence claims in that state petition until he filed this

federal habeas petition on November 18, 2006.  Because petitioner provides no reason for this

almost three year period of inactivity, the court finds petitioner did not exercise reasonable

diligence in pursuing review of those claims.  *See Horning*, 197 Fed. App'x at 94 (finding that

two year delay between dismissal of PCRA petition and filing of habeas claim did not constitute

reasonable diligence).  Even if petitioner relied on the pending proceedings related to his first

PCRA petition as the reason for waiting to file this habeas petition, such reliance can not justify

petitioner's delay in pursuing the claims in his second and third PCRA petitions.  *See Garrick*,

162 Fed. App'x at 125 (noting that "nothing prevented [petitioner] from filing a timely petition

and then seeking to amend or otherwise complete it as 28 U.S.C. § 2242 and Fed. R. Civ. P.

15(a) would allow," once all pending state proceedings resolved); *see also Pace*, 544 U.S. at 416

(rejecting equitable tolling on basis that exhaustion requirement forced petitioner to wait to see if

PCRA petition was timely before filing habeas petition because petitioner could have filed timely

"protective" habeas petition); *Tyler v. Palakovich*, No. Civ. 3:CV-04-0510, 2006 WL 485306, at

*6 (M.D. Pa. Feb. 28, 2006) (finding no basis for equitable tolling in petitioner's belief that

---

[19]  In his December 9, 2003 memorandum supporting his third PCRA petition, petitioner referred to the dismissal of his second PCRA petition.  (*See* Exs. to Resp'ts.' Resp. to Pet. for Writ of Habeas Corpus, Ex. J - Mem. of Law in Supp. Transmitting Pet'r's PCRA Appeal to Prothonotary Super. Ct. for Docketing 3-4.)  In his objections to the R&R, petitioner quotes Judge Sarmina's dismissal of his third PCRA petition.

"needed to exhaust state court remedies on his 'newly discovered evidence' claim before filing a federal habeas petition" because petitioner could have filed timely "protective" habeas petition).

Overall, a persistent pattern of lengthy and unjustified delays underlies petitioner's conduct throughout the state postconviction proceedings and demonstrates a lack of reasonable diligence. "Under long-established principles, petitioner's lack of diligence precludes equity's operation." *Pace*, 544 U.S. at 419. Despite petitioner's attempt to show extraordinary circumstances that led to his untimely federal habeas petition, petitioner's failure to show reasonable diligence means petitioner has not presented a "rare situation" that justifies this court grant equitable tolling of the one-year filing period for his habeas claims. *See LaCava*, 398 F.3d at 275. Without equitable tolling, petitioner has filed a petition beyond the limitations period of § 2244(d), and the court can not consider the merits of the petitioner's claims, regardless of whether they have any validity.

**IV.    Conclusion**

For the reasons explained above, the court will dismiss as untimely the instant petition under § 2244. Consequently, the court must also decide whether to issue a certificate of appealability ("COA"). *See* Third Circuit Local Appellate Rule 22.2. The court may issue a COA only if the defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, a COA may not issue unless the prisoner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

"Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* at 484. As explained above, even after consideration of all applicable tolling of the limitations period, petitioner did not file his habeas petition within the one-year statutory filing period contained in AEDPA.  As a result, the court will dismiss the petition on procedural grounds and not reach the merits, an action reasonable jurists could not dispute.  Therefore, a certificate of appealability will not issue. *See Thorpe v. Wilson*, Civil Action No. 06-712, 2007 WL 128885, at *4 (E.D. Pa. Jan. 12, 2007) (finding that COA should not issue where habeas petition not filed timely within one-year period of limitations under § 2244(d)(1)).

An appropriate order follows.